UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

JUL 1 2 2012

MSSI ACQUISITION, LLC,              )
                                    )
            Plaintiff,              )
                                    )
      v.                            )   Case No. 1:11-cv-01312 (LMB/IDD)
                                    )
AZMAT CONSULTING, INC., *et al.*,   )
                                    )
            Defendants.             )
_____)

## MEMORANDUM OPINION

This matter is before the Court on Plaintiff's Motion for Default Judgment (Dkt. No. 13) and Defendants' Motion to Set Aside Default (Dkt. No. 19). The motions have been briefed and a hearing was held on March 30, 2012. Thereafter, the Court required the parties to submit supplemental memoranda specifically addressing the issue of whether Defendants have proffered evidence of a meritorious defense or valid counterclaim. A second hearing was held on April 27, 2012. Upon consideration of the motions, memoranda in support, oral argument, and the underlying record, this Court concludes that Defendants' Motion to Set Aside Default shall be **DENIED** for the reasons that follow. Plaintiff's Motion for Default Judgment will be taken under advisement and an appropriate Report and Recommendation will issue to the district judge.

## I.   PROCEDURAL HISTORY

MSSI Acquisition, LLC ("MSSI" or "Plaintiff") filed a Complaint on December 5, 2011 against Azmat Consulting, Inc. and Tariq Azmat (collectively, "Defendants") for breach of contract, resulting trust, constructive trust, fraudulent misrepresentation, and common law conspiracy to commit fraud. (Dkt. No. 1.) On January 26, 2012, returns of service were filed with the Court, which indicated that Defendants were served on December 7, 2011. (Dkt. Nos.

1

6, 7.)  On February 2, 2012, after Defendants failed to respond, the Honorable United States District Judge Leonie M. Brinkema ordered Plaintiff to seek and obtain default and default judgment as to all defendants in the suit.  (Dkt. No. 9.)  On February 3, 2012, Plaintiff filed a request for entry of default (Dkt. No. 8), and the Clerk entered default against the Defendants on February 8, 2012.  (Dkt. No. 12.)

On February 17, 2012, Plaintiff filed a motion for default judgment against Defendants. (Dkt. No. 13.)  The certificate of service attached to the motion for default judgment indicated that the motion, memorandum in support, and notice of hearing were mailed to Defendants on the same day, February 17.  The motion was referred to the undersigned Magistrate Judge and was set for a hearing for March 2, 2012.  On February 29, 2012, Defendants filed a motion to continue the hearing on Plaintiff's motion for default judgment and sought leave to file an opposition or response to the same.  (Dkt. No. 16.)  Defendants' motion was granted and they were allowed until March 12, 2012 to file any motion or response they deemed appropriate.

On March 12, 2012, Defendants filed the instant Motion to Set Aside Default.  (Dkt. No. 19.)  No separate opposition to Plaintiff's Motion for Default Judgment was filed.  However, a ruling on Defendants' motion to set aside the entry of default must necessarily precede a ruling on Plaintiff's motion for default judgment.  Although not operating as an opposition to default judgment, a favorable ruling on Defendants' motion would necessarily render Plaintiff's motion moot.  Therefore, the undersigned first addresses Defendants' Motion to Set Aside Default.

## II.   ANALYSIS

"The court may set aside an entry of default for good cause."  Fed.R.Civ.P. 55(c). Indeed, the Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits."  *Colleton*

*Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010) (citations omitted). However, the decision to set aside an entry of default lies largely within the discretion of the district court. *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 203 (4th Cir. 2006). In considering whether to set aside an entry of default, this Court should consider "whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic." *Id.* at 204-05. These factors are to be "liberally construed in order to provide relief from the onerous consequences of defaults and default judgments." *Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951, 954 (4th Cir. 1987). Ultimately, default should ordinarily be set aside default "unless the movant either fails to present a reasonable excuse for his neglect or fails to show he has a meritorious defense to the merits of the action." *Am. Science & Eng'g. Inc. v. Autoclear, LLC*, 606 F.Supp.2d 617, 621 (E.D. Va. 2008)

In this case, although a number of the relevant factors favor setting aside the Clerk's entry of default as to both defendants, the Court finds that Defendants failed to sufficiently proffer evidence of a meritorious defense or counterclaim, and therefore, default should not be set aside. Defendants had at least four opportunities to proffer evidence and argument to show that they have a meritorious defense or valid counterclaim. Despite these chances, Defendants failed to produce anything other than muddled facts and nebulous legal arguments.[1]

---

[1] While the pleadings of *pro se* litigants are to be construed liberally, the Defendants here are represented by counsel and receive no such latitude. After having initially failed to provide the Court with anything short of conclusory statements in its Motion to Set Aside Default, as well as at the hearing on the same, the Court ordered Defendants to submit supplemental briefing. In no uncertain terms, the Court requested that "[s]uch briefing shall include sufficient facts, citation to supporting case law, rules, and/or statutes, as well as an analysis of how those facts provide a meritorious defense." (Dkt. No. 23.) Defendants' supplemental briefing once again falls short of this request. Rather than heeding the Court's Order, counsel for Defendants submitted a supplemental brief with only one page cursorily addressing whether a meritorious defense exists. Counsel failed to provide sufficient facts and an analysis of how those facts, coupled with the law, amount to a meritorious defense. Rather, counsel submitted a

### A. Factors Favoring Setting Aside Default

Undoubtedly, there are certain considerations that weigh in favor of this Court setting aside the entry of default. For instance, the reasonable promptness upon which Defendants acted upon learning of this action, the lack of prejudice to the Plaintiff, and Defendants' lack of dilatory behavior each militate in favor of setting aside default. Although the existence of less drastic sanctions could also be a favorable consideration, this Court finds that it does not weigh in favor of the Defendants here.[2] Each consideration will now be briefly addressed in turn.

#### 1. *Reasonable Promptness*

In considering what constitutes reasonable promptness, "[d]istrict courts in the Fourth Circuit have found that a defendant acted reasonably promptly when waiting seventeen, twenty-one, and thirty-two days after default was entered before attempting to set it aside." *Burton v. The TJX Cos., Inc.*, No. 3:07-cv-760, 2008 WL 1944033, at *4 (E.D. Va. May 1, 2008) (citations omitted); *see also Lolatchy*, 816 F.2d at 952-54; *Vick v. Wong*, 263 F.R.D. 325, 330 (E.D. Va. 2009). Here, roughly twenty-one days elapsed between the entry of default and Defendants' first

---

supplemental affidavit of Defendant Azmat and referred the Court to her client's statements in the affidavit. Defense counsel was specifically asked to provide sufficient facts upon which she relies on in her supplemental memorandum, and citing to particular sections in an affidavit in lieu of providing such facts in the memorandum is inappropriate. While an affidavit may be drafted solely by the affiant, Azmat's affidavit contains numerous grammatical errors and incoherent statements, which necessitated the Court to spend additional time deciphering and attempting to make sense of the facts. Such a submission to this Court is improper and displays a lack of respect for this Court. As the Honorable United States District Judge Joseph Goodwin once admonished counsel in a case, the Court finds the same fitting here: "When submitting briefs to the court, attorneys should strive to set forth thoughtful, well-crafted arguments through established principles for writing and citation. Although the court does not demand perfection, it does expect attorneys to reach a minimum threshold of proficiency. The brief filed by [Defendants'] counsel fails to meet this threshold." *Pigg v. United States*, No. Civ. 2:05-cv-00895, 2006 WL 470608, at *1 n. 1 (S.D. W. Va. Feb. 27, 2006).

[2] Alternative sanctions less drastic than entry of default could be imposed to cure the Defendants' failure to timely respond and alleviate Plaintiff of any financial prejudice incurred. Plaintiff suggests, quite appropriately, that this Court could sanction Defendants by way of charging them with Plaintiff's "reasonable attorney's fees for the time preparing the Request for Entry of Default, the Motion for Default [Judgment], and the preparation of [the] Opposition" to Defendants' motion. (Pl. Mem. Opp. at 5.) However, because this Court finds that Defendants have failed to proffer a meritorious defense, less drastic sanctions are inadequate to cure such a defect. Thus, while in the abstract there may be alternative sanctions less drastic than entry of default that could be applied here, such lesser sanctions would be not be appropriate given the record and Defendants' lack of a meritorious defense to this action.

appearance and motion.  This alone, contrary to Plaintiff's arguments, supports a conclusion that Defendants acted with reasonable promptness.

However, "[w]hether a party has taken 'reasonably prompt' action, of course, must be gauged in light of the facts and circumstances of each [case]."  *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982).  Here, although the lawsuit was filed in December 2011, Defendants assert that they did not receive notice of the action until February 2012. (Azmat Decl. ¶¶ 2, 5.) In support, Azmat states that he was in business meetings all day and did not return home until near midnight on December 7, 2011, the day that service was delivered.  (*Id.* ¶ 2.)  The affidavit of service indicates that a private process server left the summons and complaint with Azmat's cousin at Azmat's residence. (Dkt. Nos. 6, 7.)  However, Azmat claims to have not received the summons and complaint prior to flying to London the next day, December 8, 2011.  (Azmat Decl. ¶ 2.)  Upon his return from London, Azmat then traveled to St. Juan and Dubai over the course of the following weeks.  (*Id.*)  It was only after he returned from Dubai in late February that he went through his mail and discovered that a lawsuit had been filed.  (*Id.*)  Upon discovering the lawsuit, Defendants promptly contacted a lawyer and the instant motion was filed.  (*Id.*)

Assuming the veracity of Azmat's declaration, this Court finds that Defendants acted with reasonable promptness upon learning of the pending lawsuit.  Thus, this factor favors setting aside default.

### 2. *Prejudice to the Plaintiff*

"In the context of a motion to set aside an entry of default, as in other contexts, delay in and of itself does not constitute prejudice to the opposing party."  *Colleton*, 616 F.3d at 418 (citation omitted).  Nonetheless, Plaintiff argues that Defendants' delay "has caused great

financial prejudice to the Plaintiff," and any further delay "merely prolongs the inevitable." (Pl. Mem. Opp. at 5.) Undoubtedly, Plaintiff would like to have this matter resolved as quickly and easily as possible. However, the Fourth Circuit has instructed that "no cognizable prejudice inheres in requiring a plaintiff *to prove* a defendant's liability, a burden every plaintiff assumes in every civil action filed in every federal court." *Colleton*, 616 F.3d at 419 (emphasis in original). Thus, the mere fact that Defendants failed to respond to the Complaint in a timely manner does not amount to the type of prejudice contemplated by the Fourth Circuit that would counsel against setting aside entry of default.[3] Thus, without more, this factor weighs in favor of setting aside default.

### 3. *History of Dilatory Action*

Aside from Defendants' initial failure to answer Plaintiff's complaint, the record is devoid of any other evidence that Defendants have a history of dilatory action in this case.[4] Upon learning of the lawsuit and default, Defendants promptly retained counsel and filed a motion to continue and for leave to respond, and then filed a timely motion to set aside default. Defendants have not sought continuances or extensions during these default proceedings. Thus, this factor weighs in favor of setting aside default.

---

[3] The Fourth Circuit contemplated that such prejudice could arise where, as a result of the delay, there are missing or dead witnesses, records are no longer available, or where the evidence could have been presented to the plaintiff sooner. *See Lolatchy*, 816 F.2d at 952.

[4] However, Plaintiff argues that Defendants do have a history of delay in this matter. Specifically, that Defendants have engaged in a "scheme to avoid repayment of the obligations under the Financing Agreement," which began months before the filing of the instant lawsuit. (Pl. Mem. Opp. at 5.) In support, Plaintiff submitted to the Court a number of letters and emails that were exchanged between Plaintiff's counsel and Azmat from August 31, 2011 through October 26, 2011. The communications relate to negotiations and discussions aimed at resolving the issues between the parties. Plaintiff suggests that these communications show Defendants' scheme to avoid repayment and frustrate Plaintiff's efforts to recover under the contract. Certainly, the Court could draw an inference from the communications that Defendants attempted to pacify Plaintiff and thwart any effort to recover the moneys allegedly due. Such a determination would weigh against setting aside default. However, the Court need not make such a determination at this time.

## B. Factors Weighing Against Setting Aside Default

Although the Court finds that a number of factors weigh in favor of setting aside the entry of default, the Court also finds that there are factors that weigh significantly against doing so. Chiefly, Defendants' failure to proffer a meritorious defense or valid counterclaim weighs considerably against setting aside default. Further, the personal responsibility for the default rests squarely on Defendants. Each factor will be addressed in turn.

### 1. *Meritorious Defense or Counterclaim*

"[A]ll that is necessary to establish the existence of a 'meritorious defense' is a presentation or proffer of evidence, which, if believed, would permit either the Court or the jury to find for the defaulting party." *Moradi*, 673 F.2d at 727. While the defendant's burden "is not onerous," he must allege "specific facts beyond simple denials or conclusory statements." *Pinpoint IT Servs., LLC v. Atlas IT Export Corp.*, 812 F.Supp.2d 710, 724 (E.D. Va. 2011). That is, bare allegations of a meritorious defense are insufficient. *See Consol. Masonry & Fireproofing, Inc. v. Wagman Construction Corp.*, 383 F.2d 249, 251-52 (4th Cir. 1967). In the end, "consideration of Defendant's meritorious defenses is vital to the analysis because the absence of meritorious defenses makes relief from default pointless." *Pinpoint IT*, 812 F.Supp.2d at 724 (citing *Indigo Am., Inc. v. Big Impressions, L.L.C.*, 597 F.3d 1, 4 (1st Cir. 2010) ("Where no meritorious defense exists, it makes little sense to set aside the entry of default, as doing so would merely delay the inevitable.")).

This Court has discretion to determine whether a proffered defense or counterclaim is meritorious. *Bank of Southside Va. v. Host & Cook, LLC*, 239 F.R.D. 441, 445 (E.D. Va. 2007). Here, Defendants assert that they have at least two meritorious defenses to this breach of contract

action.[5]   First, Defendants assert the defense of fraud in the inducement.   Second, Defendants allege that there was a subsequent contract between the parties that either rescinded or superseded the initial contract.   While the Defendants are not required to prove beyond all doubt that they will prevail at trial, they must still show that at least one of their defenses have merit on its face.   Upon review of the evidence presented by the parties, the Court concludes that Defendants' assertions fail to rise to the level to warrant a finding of a meritorious defense.

### a.  Fraud in the Inducement

A claim for fraudulent inducement under Virginia law requires a party to show "(1) a false misrepresentation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting in damage to the party misled." *Evaluation Research Corp. v. Alequin*, 247 Va. 143, 439 S.E.2d 387, 390 (1994). While Defendants are not required to prove their meritorious defense at this stage, the Court must determine that the proffer is sufficient so that, "if believed, [it] would permit either the Court or the jury to find for the defaulting party." *Moradi*, 673 F.2d at 727.   The evidence presented by the parties was largely in conflict as to whether Dr. Sahay made any false misrepresentations to induce Azmat to enter into the Financing Agreement—the contract at issue here.   However, accepting as true the evidence most favorable to Defendants, this Court finds

---

[5] The Court notes that, while the Complaint includes claims for breach of contract, resulting trust, constructive trust, fraudulent misrepresentation, and common law conspiracy to commit fraud, Defendants only address the breach of contract claim.   Moreover, there are two defendants to this action: (1) Azmat, the individual defendant, and (2) Azmat Consulting, Inc., the corporate defendant.   Defense counsel has not articulated separate defenses, aside from the bare statement that, because Azmat is not a party to the contract at issue, he "has additional defenses that the corporate defendant does not have."   (Mot. Hr'g Tr. 3, Apr. 27, 2012.)   This, alone, is insufficient to constitute a proffer of a meritorious defense, and without further delineation by counsel, need not be addressed any further.

that Defendants have failed to proffer sufficient evidence of a defense of fraud in the inducement that would permit a finder of fact to find for Defendants.[6]

Initially, Defendants assert that Dr. Sahay omitted the fact that MSSI was not in existence at the time the Financing Agreement was executed, and had Defendants known this, they never would have entered into the contract.[7] (Azmat Decl. ¶ 10; Defs. Mem. Supp. at 3.) Additionally, Defendants contend that Dr. Sahay also misrepresented the financial health of MSSI and failed to disclose the fact that MSSI was in bankruptcy. (Azmat Suppl. Decl. ¶ 7.)

However, the Court cannot view Defendants' allegations in a vacuum. In determining whether such a proffer could be deemed a meritorious defense in this action, the Court looks to the documentary evidence submitted by the parties. Upon review of the record, it is clear that any defense or counterclaim premised on fraud in the inducement lacks merit and must fail. Aside from Defendants' failure to proffer any specifics of the alleged misrepresentations, any claim of fraudulent inducement fails because Defendants have essentially ratified the Financing Agreement due to their conduct and failure to disavow the contract after allegedly discovering the alleged misrepresentations.

It is well-settled that "[a] party intending to repudiate a contract on the ground of fraud must act within a reasonable time and with great punctuality upon learning of the wrong." *Link*

---

[6] The same is true to the extent that Defendants attempt to assert a valid counterclaim based on the alleged fraud. "In the context of a Rule 55 analysis, [Rule 9(b) requires] . . . that any allegedly meritorious claim sounding in fraud be pled with particularity before it can serve as grounds for setting aside the entry of a default." *Bank of Southside Va.*, 239 F.R.D. at 448. Defendants have failed to articulate the time or place of the alleged misrepresentations, as well as any details relating to each assertion. Rather, Defendants merely rely on the bare assertions that Dr. Sahay made certain misrepresentations prior to executing the Financing Agreement on behalf of MSSI. Without more, such claims cannot be deemed meritorious.

[7] Defendants initially argued that the contract was void because Plaintiff could not enter into a contract prior to it coming into existence. However, this argument is misplaced. It is well-settled that "Virginia law allows an agent or promoter of a business entity to bind the entity to contracts even before that entity is formed." *T.G. Slater & Son v. Donald P. & Patricia A. Brennan LLC*, 385 F.3d 836, 842 (4th Cir. 2004) (citing *Branning Mfg. Co. v. Norfolk-Southern R. Co.*, 138 Va. 43, 121 S.E. 74, 81 (1924)). As an agent and owner of MSSI, Dr. Sahay had the authority to enter into contracts and bind MSSI to such contracts prior to its formation. Thus, any defense premised solely on the fact that MSSI was not yet formed at the time the Financing Agreement was executed fails as a matter of law.

*Associates v. Jefferson Standard Life Ins. Co.*, 223 Va. 479, 484, 291 S.E.2d 212 (1982) (citations omitted).  That is, "[t]he time for him to demand relief is upon the discovery of the alleged misrepresentation." *United States v. Idlewild Pharmacy, Inc.*, 308 F.Supp. 19, 23 (E.D. Va. 1969).  Otherwise, "[h]e will be deemed to have waived his right of repudiation if, after discovery of the fraud, he treats the contract as a subsisting obligation." *Link Associates*, 223 Va. at 484-85.  As explained by the United States Supreme Court,

> Where a party desires to rescind upon the ground of mistake or fraud, he must, upon the discovery of the facts, at once announce his purpose, and adhere to it. If he be silent, and continue to treat the property as his own, he will be held to have waived the objection, and will be conclusively bound by the contract, as if the mistake or fraud had not occurred.  He is not permitted to play fast and loose.  Delay and vacillation are fatal to the right which had before subsisted.

*Id.* at 485 (quoting *Grymes v. Sanders*, 93 U.S. 55, 62, 23 L.Ed. 798 (1876)).

Here, Defendants have alleged that Dr. Sahay made a number of misrepresentations that induced them to enter into the Financing Agreement.  However, the record is replete with evidence that Defendants either knew of these alleged misrepresentations from the outset or later learned of them and never attempted to repudiate or disavow the Financing Agreement.  Such evidence is fatal to Defendants' purported defense.

For example, the Financing Agreement specifically provides that MSSI "needs financing for its *reorganization plan*, and for future acquisition and expansion needs."  (Financing Agreement at 1 (emphasis added).)  In this context, reorganization plan refers to Chapter 11 bankruptcy.[8]  At the April 27, 2012 hearing, the following dialogue transpired on this topic:

> THE COURT:     In the recitals in the financing agreement itself, it says the company, which was, I think, MSSI, the company needs financing for its reorganization plan. "Reorganization plan" generally means reorganization pursuant to bankruptcy, doesn't it?

---

[8] Black's Law Dictionary specifically defines reorganization plan as: "*Bankruptcy*. A plan of restructuring submitted by a corporation for approval by the court in a Chapter 11 case."  Black's Law Dictionary 1413 (9th ed. 2009).

| MS. STEWART: | Well, it does to an attorney, Your Honor. It doesn't necessarily to a layperson. |
| THE COURT: | So you're saying your client had no idea what that word meant when he signed this agreement? |
| MS. STEWART: | My client has stated in his affidavit that he was not aware of the bankruptcy at the time. |

(Mot. Hr'g Tr. 10, Apr. 27, 2012.)  However, the record is unmistakably clear that Defendants

not only had legal counsel prior to the execution of the Financing Agreement, but that

Defendants' New Jersey counsel actually drafted the contract.  (*See* Ex. 2, Dkt. No. 25-2, 6/28/07

E-mail ("To this end, after I spoke to you, I spoke to my attorney in New Jersey, Ms. Verma and

requested a draft of the agreement intended between us. (Copy Attached)").)[9]  In any event,

while Virginia law recognizes that "[c]oncealment of a material fact by one who knows that the

other party is acting upon the assumption that the fact does not exist constitutes actionable

fraud," *Allen Realty Corp. v. Holbert*, 227 Va. 441, 318 S.E.2d 592, 597 (1984), it is difficult for

Defendants to claim that MSSI's bankrupt status was concealed by Dr. Sahay when the contract

specifically included the terms "reorganization plan."

Moreover, MSSI and Telescience International Inc. ("TII") were companies publicly

traded on the Over the Counter Bulletin Board ("OTCBB").  As such, the financial health of the

companies was readily accessible to Defendants at all times.  The same is true as to the bankrupt

status of MSSI and TII, as bankruptcy filings are also publicly available.  This is important

because Defendants must show that they reasonably relied on Dr. Sahay's alleged

misrepresentations in order to sustain a claim or defense of fraudulent inducement.  Under

---

[9] This is inconsistent with Azmat's supplemental affidavit: "The contracts which are subject matter of this litigation were not drafted by any lawyer. These are documents prepared by lay people; that is myself and Dr. Sahay." (Azmat Suppl. Decl. ¶ 3.)  The Court is concerned about such a representation in light of actual documentary evidence that was submitted where Azmat stated in an email in 2007 that he not only had an attorney, but that his attorney actually drafted the agreement, a draft of which was attached to the 2007 email.

Virginia law, "[i]n order to prove reliance, a [party] must demonstrate that its reliance upon the representation was reasonable and justified." *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 630 (4th Cir. 1999) (quotation and citation omitted).   Furthermore, "reliance on a false representation is not justified where the relying party fails to undertake a prudent investigation." *Id.* The record is unclear as to whether Defendants conducted a reasonable investigation prior to entering into the Financing Agreement, as defense counsel did no more than assert that Dr. Sahay made misrepresentations to induce Defendants into entering into the contract.   However, reliance is an element of fraud in the inducement, so this must exist in order for the defense or claim to have merit.

Nevertheless, even assuming that Defendants had no knowledge of Plaintiff's financial condition and the bankruptcy at the time the Financing Agreement was executed, Defendants knew of this fact no later than October 2007.   Such a conclusion is compelled by the terms "Debtor in Possession, Chapter 11, reorganization Plan" contained in a Letter of Intent ("LOI") drafted by Azmat and executed by the parties in October 2007. (*See* Ex. 4, Dkt. No. 25-2, Oct. 2007 LOI at 1.)   Defendants' counsel conceded this point at the April 27, 2012 hearing:

> THE COURT:   Well, there was a letter of intent on investment agreement proposal drafted in October of 2007 that appears by your client, and it says in the initial funding section that debtor-in-possession, Chapter 11 reorganization plan.
>
> MS. STEWART:   I understand, Your Honor.
>
> THE COURT:   Which means that at the very least, he was on notice of bankruptcy in October of 2007, when he drafted this letter of intent, correct?
>
> MS. STEWART:   He should—he should have known, Your Honor.   I will concede he should have known.

(Mot. Hr'g Tr. 11.) Consequently, if, as Defendants suggest, they never would have entered into the agreement had they known that MSSI was in bankruptcy, Defendants should have repudiated the Financing Agreement at some time no later than October 2007 upon discovering that MSSI was not in the financial health it was purported to be in at the time the contract was executed.

However, Defendants never disavowed the Financing Agreement. Indeed, this Court questioned defense counsel on this point at the April 27, 2012 hearing:

> THE COURT:    Did he approach Mr. Sahay and say: I'm rescinding the original contract.
>
> MS. STEWART:    Not that I'm aware of, Your Honor.
>
> THE COURT:    Did he do anything? Did he try to file a lawsuit against him for violating the previous contract?
>
> MS. STEWART:    Not that I'm aware, Your Honor.

(Mot. Hr'g Tr. 11.) Beyond question, the numerous e-mails between the parties, ranging from June 25, 2007 through January 29, 2009 clearly demonstrates that Defendants never repudiated the Financing Agreement. (Ex. 3, Dkt. No. 25-2, E-mails.) Instead, such e-mails reveal that Defendants continued to actively perform under the contract and never questioned the validity of the agreement. Such conduct is fatal to Defendants' claimed defense of fraudulent inducement, where, upon discovering alleged misrepresentations, instead of repudiating the contract, they continued to perform and essentially ratified it. With this, the Court cannot find such a proffered defense to be meritorious.

### b. Subsequent Contract Rescinded or Superseded

Aside from a defense of fraudulent inducement, Defendants have attempted to proffer a meritorious defense based on the allegation that the Financing Agreement was either superseded or rescinded by a later agreement. Without more, such a bare allegation is insufficient to permit

this Court to find merit in such a defense. In an effort to assert this defense, Defendants have created a somewhat moving target, altering its position at least twice to address challenges and deficiencies raised by both Plaintiff and this Court. Nonetheless, either proffer fails to meet the threshold finding that it is a meritorious defense. For the sake of completeness, the Court addresses each argument raised by Defendants.

First, Defendants initially contended that the parties entered into a written contract, the Investment Agreement, on November 17, 2008, which allegedly either rescinded or superseded the July 7, 2007 Financing Agreement. (Azmat Decl. ¶¶ 6-7.) However, the Investment Agreement does not reference the Financing Agreement at all. (*See*, Ex. B, Dkt. No. 20-1, Investment Agreement.) In fact, the Investment Agreement is a completely separate contract dealing with matters completely distinct from the Financing Agreement. Looking solely at the four corners of the contract, there is nothing in the Investment Agreement that rescinds or supersedes the Financing Agreement. Still, Defendants pointed to the four checks issued by Azmat to Dr. Sahay to support their theory. Azmat alleged that, because the four checks are all dated from November 20, 2008 onwards, they are clearly payments under the Investment Agreement, not the Financing Agreement. (*Id.*; Defs. Mem. Supp. at 3.) However, this simply cannot be true. First, check number 201 is dated November 10, 2008, which is seven days prior to the supposed date that the Investment Agreement was executed. (Ex. 10, Dkt. No. 25-3, Checks.) And second, a letter signed by both Azmat and Dr. Sahay, dated October 26, 2008, acknowledged Dr. Sahay's receipt of the four checks from Azmat Consulting to MSSI. (Ex. 10, Dkt. No. 25-3.) Thus, Defendants' argument that the checks were issued as part of an agreement not yet entered into is nonsensical and is not supported by the evidence. In any event,

14

Defendants abandoned their position that the Investment Agreement superseded the Financing
Agreement in their supplemental briefing as well as at the April 27, 2012 hearing.[10]

In Defendants' second attempt to proffer a defense based on a subsequent agreement
either rescinding or superseding the Financing Agreement, Defendants assert that there was
actually an oral agreement that set aside the Financing Agreement. (Defs. Suppl. Mem. Supp. at
3.)   Although the Financing Agreement was reduced to writing and signed by all parties,
Defendants assert that "a [written] contract may be modified by a new oral contract." (*Id.* at 3
(citing *Reid v. Boyle*, 259 Va. 356, 369-70, 527 S.E.2d 137 (2000).)  In support, Defendants' cite
legal authority suggesting that, "[a] contract in writing, but not required to be so by the statute of
frauds, may be dissolved or varied by a new oral contract . . . ." *Zurich General Accident &
Liab. Ins. Co. v. Baum*, 159 Va. 404, 409, 165 S.E. 518 (1932).   Whether or not these legal
principles apply here, Defendants' proffer is insufficient.

At the April 27, 2012 hearing, defense counsel suggested that, "[Defendants believe] they
had an oral agreement to disregard the first contract and to proceed accordingly.  That Dr. Sahay
was to hold the checks, that those checks were not to be cashed, and that he violated, Dr. Sahay
violated that oral agreement when he in turn went and cashed those checks." (Mot. Hr'g Tr. 8.)
When further prompted for details about the agreement, defense counsel replied that there was a
"verbal agreement that the terms of Financing Agreement would no longer be in place and that
they were starting fresh." (Mot. Hr'g Tr. 9.)  These bare assertions, however, cannot serve as the
basis for this Court to find that Defendants have a meritorious defense.  This is especially true
where Defendants cannot provide any details of the alleged oral contract upon which they rely.

---

[10] Due to the inconsistency between Defendants' initial proffer and Defendants' supplemental proffer, this Court
asked defense counsel the following question: "At one point in time, also, you talk about a second written contract;
and then in your briefing, you talk about this oral contract that supposedly supersedes the financing agreement. Was
there an oral contract or written contract that allegedly superseded the original financing agreement?"  To which
defense counsel responded: "An oral contract, Your Honor." (Mot. Hr'g Tr. 10.) Thus, Defendants no longer assert
that the Investment Agreement rescinded or superseded the Financing Agreement.

When asked what each party's obligations and rights were under the oral contract, defense counsel responded: "That truthfully, Your Honor, is not entirely clear." (Mot. Hr'g Tr. 9.)

It is impossible for this Court to determine whether the alleged oral agreement superseded the obligations and rights of the parties under the Financing Agreement without any specific details aside from the bare allegation that the oral contract superseded the written contract. Without more, such a hollow allegation cannot be sustained, and this Court cannot evaluate whether this defense has any merit. Thus, Defendants have again failed to satisfy the minimum threshold requirement of proffering some evidence of a meritorious defense. Conclusory statements are not sufficient and must be supported by some evidence.

### c. *No Meritorious Defense or Valid Counterclaim*

After a thorough review of the entire record and Defendants' proffers and arguments in support of their alleged meritorious defenses and counterclaims, this Court concludes that Defendants have failed to proffer a meritorious defense or counterclaim. As noted from the outset, "[t]he underlying concern is . . . whether there is some possibility that the outcome . . . after a full trial will be contrary to the result achieved by the default." *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir. 1988) (citation omitted). Based on the record here, this Court cannot find it likely that the outcome after a full-fledged trial would be any different than the outcome achieved by the default. To proceed on the merits would be a waste of judicial resources and would be placing form over substance, as this Court has already determined that Defendants have failed to proffer any meritorious defenses. Thus, this factor weighs significantly against setting aside default.

## 2. *Personal Responsibility of Defaulting Party*

Though the parties did not directly address the personal responsibility of the defaulting party, the blame falls squarely on Defendants as they are personally responsible for the default and cannot blame the inattention or negligence of counsel.  Although this Court finds that Defendants acted with reasonable promptness upon discovering the lawsuit, the excuse for the delay is questionable.  In particular, Azmat claims that he did not go through his mail between December 8, 2011 and February 21, 2012, and therefore never learned of this action until that time.  (Azmat Decl. ¶ 2.)  This behavior is inconsistent with, and belies the type of conduct that may be expected by a sophisticated businessman.  Surely, a reasonably prudent businessperson would check his or her mail with greater frequency than once every two or three months.  Be that as it may, the blame for defaulting unquestionably falls squarely on Defendants.  Thus, this factor weighs against setting aside default.

### III.    CONCLUSION

For the reasons set forth above, the Court finds that Defendants have not demonstrated good cause under Rule 55(c) to set aside the Clerk's entry of default in this case, particularly because Defendants have failed to proffer evidence of a meritorious defense or valid counterclaim.  Therefore, Defendants' Motion to Set Aside Default is hereby DENIED.  An appropriate Order will follow.

_/s/_

Ivan D. Davis
United States Magistrate Judge

July 12, 2012
Alexandria, Virginia